UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

JANET RUSSELL,                              :
                                            :       Case No.: _____
                Plaintiff,                  :
                                            :       **COMPLAINT**
        -against-                           :
                                            :       **DEMAND FOR JURY TRIAL**
AVON PRODUCTS, INC., CHAN W.                 :
GALBATO, W. DON CORNWELL, JAN               :
ZIJDERVELD, JOSE ARMARIO, NANCY             :
KILLEFER, SUSAN J. KROPF, HELEN             :
MCCLUSKEY, ANDREW G. MCMASTER,              :
JR., JAMES A. MITAROTONDA, MICHAEL          :
F. SANFORD, and LENARD TESSLER,             :
                                            :
                Defendants.                 :

------------------------------------- X

Plaintiff, Janet Russell ("Plaintiff"), by her undersigned attorneys, alleges upon personal

knowledge with respect to herself, and information and belief based upon, *inter alia*, the

investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Avon Products, Inc. ("Avon" or the

"Company") and the members of the Company's board of directors (collectively referred to as the

"Board" or the "Individual Defendants" and, together with Avon, the "Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"),

15 U.S.C. §§ 78n(a) and 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Item 1015 of

Regulation M-A, 17 C.F.R. 229.1015, in connection with the proposed merger (the "Proposed

Merger") between Avon and Natura Cosméticos S.A., through its affiliates (collectively "Natura").

2.      On May 22, 2019, Avon entered into an Agreement and Plan of Mergers (the

"Merger Agreement"), as amended on October 3, 2019, pursuant to which the Company's

shareholders will receive either: (i) 0.300 American Depositary Shares of Natura &Co Holding—

the combined post-merger entity—against the deposit of two shares of common stock of Natura &Co Holding; or (ii) 0.600 Natura & Co Holding Shares for each share of Avon common stock they own (the "Merger Consideration"). Immediately following completion of the Proposed Merger, former holders of Avon common stock will own approximately 24% of Natura &Co Holding on a fully diluted basis and former Natura shareholders will own approximately 76% of Natura &Co Holding on a fully diluted basis.

3.      On October 4, 2019, in order to convince Avon's shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Avon, Natura, and the combined company; (ii) the valuation analyses performed by Avon's financial advisors, PJT Partners LP ("PJT") and Goldman Sachs & Co. LLC ("Goldman Sachs" and together with PJT, the "Financial Advisors"), in support of their fairness opinions; (iii) the conflicts of interest faced by PJT; and (iv) the background of the Proposed Merger.

5.      The special meeting of Avon shareholders to vote on the Proposed Merger is currently scheduled for November 13, 2019 (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise her corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Avon's shareholders sufficiently in advance of the

Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under 28 U.S.C. § 1391, because Avon is a New York corporation located in this District, the transaction and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.      Plaintiff is, and at all relevant times has been, a holder of Avon common stock.

11.      Defendant Avon was founded in New York, is incorporated in New York, and maintains offices at 1 Avon Place, Suffern, NY 10901. Avon is a global manufacturer and marketer of beauty and related products. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "AVP".

12.      Individual Defendant Chan W. Galbato is, and has been at all relevant times, a director of Avon.

13.     Individual Defendant W. Don Cornwell is, and has been at all relevant times, a director of Avon.

14.     Individual Defendant Jan Zijderveld is, and has been at all relevant times, a director of Avon.

15.     Individual Defendant Jose Armario is, and has been at all relevant times, a director of Avon.

16.     Individual Defendant Nancy Killefer is, and has been at all relevant times, a director of Avon.

17.     Individual Defendant Susan J. Kropf is, and has been at all relevant times, a director of Avon.

18.     Individual Defendant Helen McCluskey is, and has been at all relevant times, a director of Avon.

19.     Individual Defendant Andrew G. McMaster, Jr.is, and has been at all relevant times, a director of Avon.

20.     Individual Defendant James A. Mitarotonda is, and has been at all relevant times, a director of Avon.

21.     Individual Defendant Michael F. Sanford is, and has been at all relevant times, a director of Avon.

22.     Individual Defendant Lenard Tessler is, and has been at all relevant times, a director of Avon.

23.     The Individual Defendants referred to in ¶¶ 12-22 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Avon they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.    Background and the Proposed Merger

24.      Avon is a manufacturer and marketer of beauty and related products. The Company's segments include Europe, Middle East & Africa; South Latin America; North Latin America, and Asia Pacific. Its product categories are Beauty, and Fashion and Home. Beauty consists of skincare (which includes personal care), fragrance and color (cosmetics). Fashion and Home consists of fashion jewelry, watches, apparel, footwear, accessories, gift and decorative products, housewares, entertainment and leisure products, children's products and nutritional products. The Company's products include Anew Ultimate Supreme Advanced Performance Creme, Anew Vitale Visible Perfection Blurring Treatment, Big & Multiplied Volume Mascara, Avon True Perfectly Matte Lipstick, Avon Life for Him and for Her Fragrances, Far Away Infinity Fragrance and Avon Nutra Effects body collection with Active Seed Complex.

25.     Natura is a Brazil-based company engaged in the personal products manufacture. The Company focuses on the development, production and distribution of cosmetics, fragrances and personal hygiene products through direct sale by Natura Beauty Consultants. The Company's product lines include deodorants, makeup accessories, sunscreens, shaving creams, shampoos, soaps, lotions, creams, lipsticks and perfumes, among others. Its portfolio comprises various brand names, such as Amo, Ekos, Tododia, Aguas, Chronos, Erva Doce, Homem, Horus, Seve and Luna. In addition, the Company operates the Aesop brand name, through which retails cosmetics. It is present in the Americas, Europe, Southeast Asia and Australia. The Company controls numerous subsidiaries, such as Industria e Comercio de Cosmeticos Natura Ltda, Natura Inovacao e Tecnologia de Produtos Ltda and Emeis Holdings Pty Ltda.

26.     On May 22, 2019, Avon and Natura issued a joint press release announcing the Proposed Merger, which states in relevant part:

**Natura &Co and Avon join forces to create a Direct-to-Consumer global beauty leader**

SÃO PAULO and LONDON, May 22, 2019 /PRNewswire/ -- Natura &Co (B3: NATU3) announces that it is acquiring Avon Products, Inc. (NYSE: AVP) in an all-share transaction, creating the fourth-largest pure-play beauty group in the world and a major force for good in the industry.

The combination creates a best-in-class multi-brand and multi-channel beauty group, with direct connections to consumers on a daily basis. The group will hold leading positions in relationship selling through Avon´s and Natura's over 6.3 million Consultants and Representatives, a global footprint through 3,200 stores, as well as an expanded digital presence across all companies. The combined Group is expected to have annual gross revenues of over US$10 billion, over 40,000 associates and be present in 100 countries.

Leveraging its iconic brands, common passion for relationships, and its omnichannel capabilities, the expanded group will bring beauty to over 200 million consumers across the world, anytime, anywhere, every day. By adding Avon to a portfolio that already includes Natura, The Body Shop and Aesop, Natura &Co will enhance its ability to better serve its different consumer profiles and distribution channels and expand into new geographies.

Avon and Natura were both founded by mission-driven individuals, reaching customers through a force of independent, primarily female micro-entrepreneurs, who act as brand ambassadors and beauty advisors. Avon is an iconic brand with a heritage of over 130 years and is the world's leading relationship selling beauty platform. Its strong brands across key beauty categories and competitive positions in a number of markets give it significant potential for future growth.

Natura &Co expects the combination to result in target synergies estimated at US$150 million to US$250 million annually, some of which will be reinvested to further enhance capabilities in digital and social selling, research & development and brand initiatives and to continue to grow the Group's geographic footprint.

Luiz Seabra, Co-Founder of Natura, declared: "We have always looked at Avon with respect and admiration. Natura was founded on its passion for beauty and relationships, and today's transaction creates a major force in the direct-to-consumer space. Direct selling was a social network before the word even existed, and the arrival of technology and globalization only multiplied opportunities to connect with consumers in a meaningful way. The peer-to-peer sales model is evolving towards social selling and the power of digital allows the group to go beyond providing products and advice, and advances women empowerment, through financial independence and enhanced self-esteem.  We believe that business can be a force for good and together with Avon, we will amplify our pioneering efforts to bring social, environmental and economic value to an ever-expanding network."

Roberto Marques, Executive Chairman of Natura &Co, declared: "Following the acquisitions of Aesop in 2013 and The Body Shop in 2017, Natura & Co is taking another exciting, decisive step to build a global, multi-brand, multi-channel, purpose-driven Group. Avon is an amazing company, an iconic brand, with passionate associates and over five million Representatives who also believe in the power of relationships. Together we will enhance our growing digital capabilities, our social network of Consultants and Representatives and leverage our global store footprint and distinctive brands, connecting, touching and influencing millions of consumers with different profiles daily, making our Group unique and creating a formidable platform for growth."

Jan Zijderveld, CEO of Avon, said: "This combination is the start of an exciting new chapter in Avon's 130-year history. It stands as a testament to the progress of our efforts to 'Open Up Avon', and we believe it will allow us to significantly accelerate our strategy and further expand into the online channel. Over the past year, we have started a transformation to strengthen Avon's competitiveness by renewing our focus on Her, simplifying our operations, and modernizing and digitizing our brand. Together with Natura, we will have broader access to innovation and a portfolio of products, a stronger e-commerce and digital platform, and improved data and tools for Representatives to drive growth and enhance value for shareholders. Further, with the support of Natura, we will continue to invest in cutting-edge technology to enhance our digital capabilities and productivity for our Representatives. Both Avon and Natura are purpose-driven organizations, and the combination will enable us to better serve our millions of Representatives, leveraging Avon's international presence with the same strongly-held commitment to enhancing Her experience and earnings."

Chan Galbato, Non-Executive Chairman of Avon said: "Our focus has been to enhance the Representative experience, accelerate international expansion, improve our cost structure, increase financial flexibility, and ultimately position the company for long-term growth and success. The Board is committed to enhancing value for shareholders and this combination with Natura represents a new era of future growth for Avon. The Avon Board is confident that Natura will be a powerful partner for the Avon brand, while providing more scale, operations and expanded opportunities for employees and Representatives, and tremendous upside potential to both sets of shareholders. We are pleased to support this transformational combination."

As part of this transaction, a new Brazilian holding company, Natura Holding S.A., has been created. Based upon the fixed exchange ratio of 0.300 Natura Holding shares for each share of Avon common stock, Natura &Co's shareholders will own approximately 76% of the combined company, while Avon common shareholders will own approximately 24%. Based on Natura's undisturbed closing price on March 21, 2019, one day prior to Natura issuing the Material Fact confirming negotiations between Avon and Natura, the transaction represents a 28% premium to Avon shareholders and implies a 2018 EBITDA multiple of 9.5x or 5.6x assuming the full impact of Natura's expected synergies. Based on closing prices on May 21, 2019, the transaction values Avon at an enterprise value of US$3.7

billion and the combined group would have an enterprise value of approximately US$11 billion. Upon closing, Natura Holding S.A.s' stock will be listed on B3 with a 55% public float and it will also have ADRs listed on the NYSE. Avon shareholders will have the option to receive ADRs traded on the NYSE or shares listed on B3. Further information is available in the Material Fact which can be accessed                    through                    the                    following                    link https://natu.infoinvest.com.br/ptb/7085/19550_691987.pdf

Upon closing, the Board of Directors of the combined company will consist of 13 members, 3 of which will be designated by Avon. The transaction remains subject to customary closing conditions including approval by both Natura &Co's and Avon's shareholders as well as anti-trust authorities in Brazil and certain other jurisdictions. Closing is expected in early 2020.

27.    The Merger Consideration represents inadequate compensation for Avon shares. Indeed, in each of the past two quarters, Avon has outperformed expectations by significantly beating earning per share estimates. Given the Company's strong recent financial performance and bright economic outlook, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II.    The Proxy Omits Material Information

28.    On October 4, 2019, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

29.    First, the Proxy only discloses "limited pro forma synergy and cost reduction estimates" but omits the actual financial projections for the combined company giving effect to

Proposed Merger, including the EBITDA and unlevered free cash flow projections utilized by Goldman Sachs in their financial analyses (the "Pro Forma Financial Projections"). Proxy at 156. In connection with rendering their fairness opinion and performing the underlying financial analyses, the Financial Advisors explicitly reviewed the Pro Forma Financial Projections and held discussions with the senior managements of both Avon and Natura. In fact, Goldman Sachs utilized next-twelve-month 2019 and 2020 EBITDA pro forma projections in performing their *Illustrative Present Value of Future Share Price Analysis* and 2019-2023 unlevered free cash flow projections in performing their *Illustrative Discounted Cash Flow Analysis*. These were the only two financial analyses performed by Goldman Sachs and disclosed in the Proxy.

30.     Additionally, on pages 141-147 of the Proxy, the Board listed the "material" factors they considered in recommending Avon shareholders vote in favor of the Proposed Merger, including the following, listed first:

> the fact that the combination of the businesses of Avon and Natura &Co is expected to generate significant synergies, which is expected to result in Natura &Co Holding having greater potential to achieve further earnings growth and general more substantial cash flow and bottom-line impact than Avon could achieve on a standalone basis and which is expected to complement and accelerate the Open Up Avon strategy

Proxy at 142.

31.     The Pro Forma Financial Projections served as a primary reason for the Board to approve and recommend the Proposed Merger and for the Financial Advisors to find the Merger Consideration "fair" to Avon shareholders. The Pro Forma Financial Projections are material as they speak squarely to the question that the Company's shareholders must answer in determining how to vote on the Proposed Merger: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Without the Pro Forma Financial Projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger.

32.     Second, the Proxy omits critical financial projections, including the net income projections for Avon, Natura, and the pro forma combined company (the "Net Income Projections"). Defendants elected to summarize the projections for Avon, Natura, and "limited pro forma synergy and cost reduction estimates" of the combined company in the Proxy, but they excised and failed to disclose the Net Income Projections. By disclosing these projections in the Proxy and withholding the Net Income Projections, Defendants render the tables of projections on pages 165-166 of the Proxy materially incomplete and provide a misleading valuation picture of Avon, Natura, and the combined company.  Simply put, net income projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

33.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by the Financial Advisors and the Board but have omitted the Net Income Projections and the Pro Forma Financial Projections. These omissions render the projections, the summary of the Financial Advisors' valuation analyses, and the summary of the Board's *Reasons for the Merger* included in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of the Financial Advisors' Fairness Opinions

34.     The Proxy describes the Financial Advisors fairness opinion and the various valuation analyses performed in support of their opinions.  Defendants concede the materiality of

this information in citing the Financial Advisors' fairness opinions and their valuation analyses among the "material" factors the Board considered in making its recommendation to Avon shareholders. Proxy at 143-144; *see also* Proxy at 150 ("The following is a summary of the material financial analyses delivered by Goldman Sachs to the Avon board of directors in connection with rendering the opinion described above."); Proxy at 158 ("The following is a summary of the material financial analyses used by PJT Partners in preparing its opinion to the independent non-Cerberus directors."). However, the summaries of the Financial Advisors fairness opinions and analyses provided in the Proxy fail to include key inputs and assumptions underlying the analyses. Without this information, as described below, Avon's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on th Financial Advisors fairness opinions in determining how to vote on the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Avon's shareholders.

35.      In summarizing the *Discounted Cash Flow* Analyses prepared by the Financial Advisors, the Proxy fails to disclose the following key information used in the analyses: (i) the 2019-2023 pro forma unlevered free cash flows Goldman Sachs used for the pro forma analysis; (ii) the pension deficit of Avon; (iii) the liquidation value of the Avon Preferred Shares; (iv) the non-controlling interest of Avon; (v) the net debt of Avon;  (vi) the pro forma adjusted net debt of Avon and Natura; (vii) the actual inputs and assumptions underlying the various discount rate ranges, including the values of the company-specific WACC/CAPM components; (viii) the actual terminal values calculated; (ix) the value of the estimated net debt PJT used to adjust Avon's enterprise value; (x) the value of the estimated net debt PJT used to adjust Natura's enterprise value.

36.      These key inputs are material to Avon shareholders, and their omission renders

the summary of the *Discounted Cash Flow* Analyses incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

37.     Without the above-omitted information Avon shareholders are misled as to the reasonableness or reliability of the Financial Advisors analyses, and unable to properly assess the fairness of the Proposed Merger.  This is especially true for the pro forma unlevered free cash flow projections, which are indisputably the most important input in the analysis. As such, these material omissions render the summary of the *Discounted Cash Flow* Analyses included in the Proxy misleading.

38.     For the same reasons, in summarizing Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the omission of the next-twelve-month 2019 and 2020 EBITDA pro forma projections renders the summary provided in the Proxy misleadingly incomplete.

39.     Next, in summarizing PJT's *Selected Comparable Company Analysis*, t he Proxy fails to disclose the identity of each company utilized in the analysis and its corresponding individual multiple. A fair summary of a comparable companies or transactions analysis requires the disclosure of the identity of, and individual multiple for, each company or transaction used. Merely providing the mean or median value of the multiples that a banker calculated without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analysis provided in the Proxy misleading.

40.     Finally, on page 149, the Proxy states that Goldman Sachs "compared certain financial and stock market information for Avon and Natura Cosméticos with similar information for certain other companies the securities of which are publicly traded; and performed such other studies and analyses, and considered such other factors, as it deemed appropriate." However, no comparable company or transactions analysis is disclosed and no explanation is provided for the absence of such analyses. On page 153 the Proxy states:

> The preparation of a fairness opinion is a complex process and is not necessarily susceptible to partial analysis or summary description. Selecting portions of the analyses or of the summary set forth above, without considering the analyses as a whole, could create an incomplete view of the processes underlying Goldman Sachs' opinion. In arriving at its fairness determination, Goldman Sachs considered the results of all of its analyses and did not attribute any particular weight to any factor or analysis considered by it. Rather, Goldman Sachs made its determination as to fairness on the basis of its experience and professional judgment after considering the results of all of its analyses. No company or transaction used in the above analyses as a comparison is directly comparable to Avon, Natura Cosméticos or Natura &Co Holding or the contemplated Transaction.

41.     Comparable companies and transactions analyses are critical financial analyses and play an important role in the valuation process. The *Company Analysis* was disclosed for PJT but withheld for Goldman Sachs. This is conspicuous to say the least. When it comes to

summarizing financial information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. The omission of the companies and/or transactions analysis performed by Goldman Sachs renders the summary of its financial analyses and fairness opinion misleadingly incomplete.

PJT's Conflicts of Interest

42.     The Proxy fails to disclose any historical relationship or exchange of compensation between PJT and Avon or the nature of PJT's previous advisory work performed for Cerberus. Disclosure of the historical relationships between an advisor and a company is required pursuant to 17 C.F.R. § 229.1015(b)(4). Such information is undoubtedly material to Avon shareholders. It is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders.

43.     On page 163 the Proxy plainly states that within the past two years: (i) "PJT Partners did not advise or receive any compensation from Natura Cosméticos" and (ii) "PJT Partners advised Cerberus on a matter unrelated to Avon or the Transaction." Yet, inexplicably, the Proxy fails to disclose any historical relationship between PJT and Avon or the nature of the work between PJT and Cerberus. These omissions fly in the face of the disclosure requirements of the Exchange Act and mislead shareholders as to the nature of PJT's relationship with Avon

and Cerberus and the conflicts of interests PJT faces. Therefore, the omission of the above information renders the statements provided on page 163 of the Proxy, and potentially the PJT's fairness opinion, misleadingly incomplete, and in violation of Item 1015.

44.      Moreover, PJT was retained by the independent non-Cerberus directors of the Avon Board to act as their financial advisor in connection with the Proposed Merger and to eliminate any conflicts of interest; however, PJT has historical conflicts with Cerberus.  Thus, the Proxy fails to disclose why a financial advisor with a potential conflict of interest and historical ties to Cerberus was retained to purportedly make the Board independent from Cerberus and remove any potential conflicts.

The Misleading Summary of the Background of the Proposed Merger

45.      The Proxy indicates that Avon and Company A entered into confidentiality agreement but fails to disclose whether that agreement contained a standstill provision and/or a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. Page 26 of the Proxy states that pursuant to the Merger Agreement, Avon is restricted from "amending or granting waivers or releases under any standstill or similar agreements with respect to any class of equity securities of Avon or any of its subsidiaries." Moreover, the Proxy indicates that LG, another bidder, was unwilling to execute a confidentiality agreement with Avon. These pieces of information indicate that standstill provisions, and potentially DADWs, were in effect after the signing of the Merger Agreement.

46.       Accordingly, the express communication of the existence of such provisions is material to Avon shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal.  The failure to plainly disclose the existence of a DADW provision creates the false impression that a party to a confidentiality agreement

could have made a superior proposal. If that confidentiality agreement contained a DADW provision, then that party could only make a superior proposal by breaching the agreement— since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the confidentiality agreements the Company entered into in the Background of the Merger section of the Proxy misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidder in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

47.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the November 13, 2019 Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

51.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015.

52.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

53.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Avon, Natura, and the combined company; (ii) the valuation analyses performed by the Financial Advisors in support of their fairness opinions; (iii) PJT's conflicts of interest; and (iv) the background of the Proposed Merger.

54.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted

information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

55.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Financial Advisors, as well as their fairness opinions and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review the Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Financial Advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

56.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

57.     Avon is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

58.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Avon's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of Avon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

63.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Avon shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 16, 2019                    **MONTEVERDE & ASSOCIATES PC**

                                            */s/ Juan E. Monteverde*
                                            Juan E. Monteverde (JM-8169)
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4405
                                            New York, NY 10118
                                            Tel: (212) 971-1341
                                            Fax: (212) 202-7880
                                            Email: jmonteverde@monteverdelaw.com

                                            *Attorneys for Plaintiff*